## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

| | | |
|---|---|---|
| GLADYS HOLLIFIELD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| ENCORE CAPITAL GROUP, INC., | ) | |
| MIDLAND FUNDING, LLC, | ) | |
| MIDLAND CREDIT MANAGEMENT, | ) | Jury Trial Demanded |
| INC., SUSAN RASMUSSEN, and | ) | |
| MORGAN & POTTINGER, P.S.C., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises under 28 U.S.C. § 1331, and pursuant to 15 U.S.C. § 1692k(d).

2.      This action arises out of violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") by all Defendants, in their illegal efforts to collect consumer debts.

3.      Venue is proper in this District because the acts and transactions occurred here and Plaintiff resides here.

### PARTIES

4.      Plaintiff Gladys Hollifield (hereinafter referred to as "Plaintiff") is a natural person who resides in Hamblen County, Tennessee and is a "consumer" as defined by 15 U.S.C. § 1692a(3).

Case 2:12-cv-00470-JRG-DHI   Document 1   Filed 12/06/12   Page 1 of 18   PageID #: 1

5.      Defendant Encore Capital Group, Inc. (hereinafter "Defendant Encore") is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and a for-profit corporation organized in Delaware, and maintains Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, as its registered agent for service of process.

6.      Defendant Midland Funding LLC (hereinafter "Defendant Midland Funding") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and a for-profit limited liability company organized in Delaware that is a wholly owned subsidiary of Defendant Encore, and that maintains Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312, as its registered agent for service of process.

7.      Defendant Midland Credit Management, Inc. (hereinafter "Defendant Midland Credit") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), a for-profit corporation organized in Kansas that is a wholly owned subsidiary of Defendant Encore, and maintains Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312, as its registered agent for service of process.

8.      Defendant Susan Rasmussen (hereinafter "Defendant Rasmussen") is a natural person who is employed by Defendant Encore as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and may be served at her home address of 16831 223rd Avenue, Long Prairie, MN 56347-5108.

9.      Defendant Morgan & Pottinger, P.S.C. (hereinafter "Defendant Morgan & Pottinger") is a for-profit professional services corporation organized in Kentucky that consists of attorneys licensed to practice law in Kentucky, Indiana, Tennessee, Ohio and other states, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and lists its registered agent for service of process as John T. McGarvey, 601 West Main St., Louisville, KY 40202.

2

## FACTUAL ALLEGATIONS

10.    Defendants have alleged Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely, a credit card debt allegedly originally owed to or serviced by Chase Bank USA, N.A. (hereinafter "Chase Bank").

11.    After default, Plaintiff's alleged debt was consigned, sold or otherwise transferred to Defendants for collection from Plaintiff.

12.    Defendants Encore, Midland Funding and Midland Credit (hereinafter collectively the "Encore Defendants") operate as a debt buying and debt collection enterprise. Defendant Encore is not simply a parent holding company, though it owns 100% of the shares and interests in Defendants Midland Credit and Midland Funding. Instead, all three Defendants operate as parts of a single business operation. Defendant Encore provides management and decision-making, Defendant Midland Funding exists as an employee-less paper entity that holds title to the enterprise's purchased debt portfolios and Defendant Midland Credit operates as the front for contact with the targeted debtor-consumers, calling itself the "servicer" of the Encore Defendants' collection accounts.

13.    Defendant Encore explains on its webpage that, "Encore Capital Group, Inc. ('Encore'), through its subsidiaries . . . , is a leading provider of debt management and recovery solutions for consumers and property owners across a broad range of assets. We purchase portfolios of defaulted consumer receivables at deep discounts to face value and use a variety of operational channels to maximize our collections from these portfolios." See http://www.encorecapital.com - last visited December 4, 2012.

3

14. Defendant Encore does not operate independent of Defendants Midland Credit and Midland Funding. It does not have a separate office, separate management or separate business and income. Instead, it serves as the name of the Encore family of subsidiaries, all of who are interrelated and inseparably operated as a single business operation that is engaged in the business of purchasing charged-off consumer debts and attempting to collect them from consumers.

15. Defendant Rasmussen is regularly engaged in the collection of consumer debts owed or due or asserted to be owed or due another by signing sworn affidavits used in support of collection lawsuits, and may be held personally liable as a debt collector who signed the affidavit filed in the collection lawsuit against Plaintiff.

16. Defendant Morgan & Pottinger regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another by allegedly preparing, reviewing and/or prosecuting collection lawsuits against consumers.

17. The Encore Defendants' main avenue of collecting consumer debts is the use of a state court litigation model that includes employment of debt collection attorneys such as Defendant Morgan & Pottinger to file collection lawsuits, and Defendant Midland Credit employees and/or agents to sign the affidavits filed in support of the lawsuits.

18. The litigation model followed by Defendants to collect consumer debts is to file collection lawsuits against consumers: (1) after making intentional business decisions that, if challenged, they will not obtain competent evidence of the alleged debt, including the contract on which Defendants allegedly relied to file and serve the collection lawsuit, (2) prior to reasonably and adequately investigating whether a consumer owes the amount of debt they are attempting to collect, or owes the debt at all, (3) intentionally using

4

sworn affidavits that knowingly contain false, deceptive, and misleading statements made by persons who do not possess personal knowledge of (a) whether a contract on which the Defendants allegedly relied to file the collection lawsuit exists, or (b) if it does exist, what language it contains regarding the contract interest rate, (c) whether the amount Plaintiff allegedly owes is correct, or (d) the documents allegedly transferring the alleged debt to the Encore Defendants' ownership actually exist that is necessary to make a sworn affidavit as to the correctness of the amount owed, and (4) with the improper motive of obtaining default judgments against 95% or more of the consumers intimidated by the allegations in the sworn affidavits made in the course of litigation and under penalty of perjury; all in order to increase Defendants' respective financial bottom lines (hereinafter referred to as the "litigation model").

19.     The only evidence provided to debt collection attorneys such as Defendant Morgan & Pottinger to file collection lawsuits are the affidavits signed by the employees and/or agents of Defendant Midland Credit.

20.     The affidavits signed by employees and/or agents of Defendant Midland Credit under penalty of perjury allege amounts owed based solely on hearsay in the form of electronic data transferred from the original creditor or it's assignee, not from personal knowledge.

21.     Defendant Morgan & Pottinger did not request any evidence beyond the sworn affidavit prior to filing and serving the collection lawsuit against Plaintiff, and filed it knowing that neither it nor the other Defendants possessed the competent evidence necessary to prove the debt in court and did not intend to obtain it, if challenged.

22.     Despite the "business records" exception to the hearsay rule being clearly defined for years, the Tennessee Court of Appeals recently determined what competent evidence is required to prove the alleged debts under this hearsay exception in a debt buyer case.[1]

23.     Defendants followed their litigation model while attempting to collect the alleged debt from Plaintiff.

24.     In a large majority of the cases, the Encore Defendants and Defendant Morgan & Pottinger use the litigation model to obtain a default judgment and the sufficiency of the debt buyer's sworn affidavits are never challenged.

25.     In those instances where a consumer has the means and ability to defend the collection lawsuit, the Defendants will dismiss the case rather than risk having their systemic fraud on the court exposed.

*April 4, 2012 Collection Lawsuit*

26.     On or about April 4, 2012, the Encore Defendants and Defendant Morgan & Pottinger filed a Civil Summons and sworn Affidavit in state court and caused it to be served on Plaintiff (collectively the "collection lawsuit"). ***Copy of the April 4, 2012 collection lawsuit is filed as Exhibit 1 to this Complaint (hereinafter "Doc. 1-1").***

---

[1] (1) "'[E]very link in the chain between the party to which the debt was originally owed and the party trying to collect the debt must be proven by competent evidence in order to demonstrate standing'", *See*, ***LVNV Funding, LLC v. Mastaw***, 2012 WL 1534785, at *5 (Tenn. Ct. App. Apr. 30, 2012) (citing ***Cach, LLC v. Askew***, 358 S.W.3d 58, 62 (Mo. 2012) (citing ***Midwestern Health Mgmt., Inc. v. Walker***, 208 S.W.3d 295, 298 (Mo. App. 2006)), and "'the Plaintiff must demonstrate . . . that it is the valid assignee of an existing debt' and that the record was made in the regular course of business". ***Id., citing, Cuda & Assoc., LLC v. Lumpkin***, 2011 WL 6413674, at *1, 2; (Conn. Super. Ct. Nov. 29, 2011) (internal citations omitted), (2) The production of business records that "properly fit within Rule 803(6), the business records exception to the hearsay rule". *Id.* at *7, and (3) The business records must be introduced by a "witness with 'personal knowledge of the business's record-keeping methods and can explain same to the court'". *Id.* at *8, fn. 13 (*citing,* ***Beal Bank S.S.B. v. RBM Co***., 2002 WL 43604, at *2) (Tenn. Ct. App. Jan. 11, 2002) (citing ***Alexander***, 903 S.W.2d at 700)).

27.    The Civil Summons and sworn Affidavit were served on Plaintiff in connection with collection of the debt and in an attempt to collect the debt, and each is a "communication" as defined by 15 U.S.C. § 1692a(2).

*Use of Civil Summons That Contained False, Deceptive and*
*Misleading Statements in Connection With Collection of the Alleged Debt*

28.    The Civil Summons stated that the Encore Defendants and Defendant Morgan & Pottinger were seeking to collect "**$4,732.40 due by contract as of June 29, 2007, plus contractual interest accruing at 10% totaling $2,249.51 as of March 29, 2012 and credits of $0.00, for a total requested judgment of $6,981.91 as of March 29, 2012 plus interest and fees from March 29, 2012 to judgment**". *See, Doc. 1-1, p. 1.* (Emphasis added)

29.    In the sworn Affidavit dated March 23, 2012, Defendant Rasmussen certified under penalty of perjury that:

(1)    "I am employed as a Legal Specialist and have access to pertinent account records for [Defendant Midland Credit], servicer of this account on behalf of [Defendant Midland Funding]."

(2)    "I . . . make the statements herein based upon personal knowledge of those account records maintained on [Defendant Midland Funding's] behalf."

(3)    [Defendant Midland Funding] "is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to [Plaintiff's Chase Bank] account . . . . ." (all caps in original)

(4)    "I have access to and have reviewed the records pertaining to the account and am authorized to make this affidavit on [Defendant Midland Funding's] behalf."

7

(5)     "I am familiar with the manner and method by which [Defendant Midland Credit] creates and maintains its business records pertaining to this account.  The records are kept in the regular course of business.  It was in the regular course of business for a person with knowledge of the act or event recorded to make the record or data compilation, or for a person with knowledge to transmit information thereof to be included in such record.  In the regular course of business, the record or compilation is made at or near the time of the act or event."

(6)     "The account shows that [Plaintiff] owed a balance of $4,732.40; and I am advised that such balance will continue to accrue interest at the rate set forth in the cardholder agreement/original contract and/or as required by law." ***See Doc. 1-1, p. 2, ¶¶ 1-3.***

30.     By following their litigation model Defendants made conflicting and confusing statements as to the amount owed in the Civil Summons and Sworn Affidavit, resulting in one or more of the Defendants (a) making a false representation of the character, amount, or legal status of any debt in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10), (b) making a false representation of the compensation which may be legally received by any debt collector for the collection of a debt in violation of 15 U.S.C. §§ 1692e, 1692e(2)(B), and 1692e(10), and (c) using unfair or unconscionable means to collect or attempt to collect the alleged debt by stating that the Encore Defendants was entitled to an amount not expressly authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. §§ 1692f and 1692f(1).

31. In conformance with their litigation model, prior to filing and serving the Civil Summons and sworn Affidavit, the Encore Defendants and Defendant Morgan & Pottinger did not review records of the debt originator to determine if the contract on which Defendants allegedly relied to file the collection lawsuit even exists and, if it does exist, whether the amount Plaintiff allegedly owes is correctly calculated.

32. Without records of the debt originator available for review prior to filing and serving the collection lawsuit, and without being able to correctly calculate the amount allegedly owed by Plaintiff based on the contract terms on which the Defendants allegedly relied to file the collection lawsuit, the Encore Defendants and Defendant Morgan & Pottinger used false, deceptive, and misleading representations or means in connection with collection of the debt by stating in the Civil Summons that Defendant Midland Funding was entitled to an amount not expressly authorized by the agreement creating the debt or permitted by law, which resulted in the Encore Defendants and Defendant Morgan & Pottinger falsely representing the character, amount and legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A), and falsely represented the compensation which may be lawfully received by any debt collector for the collection of a debt in violation of 15 U.S.C. § 1692e(2)(B), both of which was the use of false, deceptive, and misleading representations or means in connection with collection of the debt or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and an attempt to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) not expressly authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. § 1692f(1), which is the use of unfair or unconscionable means to collect or attempt to collect the debt, in violation of 15 U.S.C. § 1692f.

9

33. Failing to acquire or review the contract on which Defendants allegedly relied to file the collection lawsuit against Plaintiff resulted in Defendants stating in the Civil Warrant and sworn Affidavit different amounts to which the Encore Defendants were entitled, and was the use of false, deceptive and misleading representations or means in connection with collection of the debt that would be confusing to the least sophisticated consumer as to how much was allegedly owed, and a threat to take any action that cannot legally be taken by attempting to collect an amount not expressly authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f, and 1692f(1).

34. By filing and serving the Civil Summons which contained knowingly false, deceptive, and misleading representations in connection with collection of the debt while unreasonably relying on Chase Bank or an assignee of Chase Bank as to the amount of debt allegedly owed by Plaintiff, the Encore Defendants and Defendant Morgan & Pottinger communicated credit information to the State court, the general public, and the Plaintiff, which is known or should be known to be false, in violation of 15 U.S.C. § 1692e(8).

35. The collection lawsuit filed against and served on Plaintiff was based solely on a sworn account, which claim was defective because it was knowingly based on false, deceptive, and misleading statements in the sworn Affidavit filed with the Civil Summons intended to deceive the state court and Plaintiff about the knowledge and information that Defendants had about the ownership and correct amount of the alleged debt.

36.     Without the contract on which the Defendants allegedly relied to file and serve the collection lawsuit and to demand the amounts owed, the Defendants may not recover attorney's fees or a contract rate of interest on the underlying debt. *Holcomb v. Cagle*, 277 S.W.3d 393, 397-98 (Tenn. Ct. App. 2008) (perm. app. den. Sup. Ct., December 15, 2008)).

### *Use of Sworn Affidavit That Contained False, Deceptive and Misleading Statements in Connection With Collection of the Alleged Debt*

37.     An affidavit filed in support of a Civil Summons on a sworn account in Tennessee is filed to attest to the correctness of the amount owed. ***See, Tenn. Code Ann. § 24-5-107(a).***

38.     Prior to signing the sworn Affidavit, Defendant Rasmussen did not review records of the originator of the debt to determine (a) whether a contract on which the Defendants allegedly relied to file and serve the collection lawsuit exists, or (b) if it does exist, what language it contains regarding the contract interest rate, (c) whether the amount Plaintiff allegedly owes is correct, or (d) if the documents allegedly transferring the alleged debt to Defendant Midland Funding actually exist, because the Encore Defendants and Defendant Morgan & Pottinger followed their litigation model and did not obtain records of the originator of the debt that would have allowed Defendant Rasmussen to do so.

39.     Without records of the debt originator available for Defendant Rasmussen to review prior to signing the sworn Affidavit, and without Defendant Rasmussen being able to correctly calculate the amount owed by Plaintiff based on the contract terms on which the Defendants allegedly relied to file the collection lawsuit, as required by Tennessee state law for a sworn account, it was not possible for Defendant Rasmussen to have the personal knowledge required to truthfully make a sworn affidavit as to the correctness of the amount owed, if any, by Plaintiff.

40.  By certifying in the sworn affidavit that:  (a) she has access to pertinent account records for Defendant Midland Credit, servicer of this account on behalf of Defendant Midland Funding, (b) she makes the statements therein based upon personal knowledge of account records maintained on Defendant Midland Funding's behalf, (c) Defendant Midland Funding is the owner of the alleged debt, (d) she has access to and reviewed the records pertaining to the alleged debt, (e) she is familiar with the manner and method by which Defendant Midland Credit creates and maintains its business records pertaining to this account, (f) the records are kept in the regular course of business, (g) it was in the regular course of business for a person with knowledge of the act or event recorded to make the record or data compilation, or for a person with knowledge to transmit information thereof to be included in such record, (h) in the regular course of business, the record or compilation is made at or near the time of the act or event, and (i) Plaintiff owes $4,732.40, plus interest and a reasonable attorney's fee, Defendant Rasmussen falsely represented the character, amount, or legal status of the alleged debt, in violation of 15 U.S.C. § 1692e(2)(A), and falsely represented the compensation which may be lawfully received by any debt collector for the collection of a debt, in violation of 15 U.S.C. § 1692e(2)(B), communicated a threat to take any action that cannot legally be taken in violation of 15 U.S.C. § 1692e(5), communicated credit information to the State court, the general public, and Plaintiff, which is known or should be known to be false, in violation of 15 U.S.C. § 1692e(8), all of which was the use of a false, deceptive, and misleading representations or means in connection with collection of the debt or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and used unfair or unconscionable means to collect or attempt to collect the debt, in violation of 15 U.S.C. §

1692f, including, but not limited to and attempting to collect amounts not expressly authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. § 1692f(1).

41. Form affidavits, such as the one filed and served in the lawsuit against Plaintiff, are generated automatically by a computer owned by Defendant Midland Credit or its agents upon request and routinely provided to Defendant Rasmussen and other employees and/or agents of Defendant Midland Credit who engage in robo-signing hundreds, if not thousands, of affidavits each day without the personal knowledge required to make a sworn affidavit as to the correctness of the amount owed, in accordance with state law.

42. The form affidavits are attached to and filed with the civil summons by debt collection attorneys such as Defendant Morgan & Pottinger, which is then served on the consumer.

43. The intentional use by Defendants of the form affidavit in Plaintiff's collection lawsuit, which contains representations that are obviously false, deceptive, and misleading, and in violation of state law, is the use of false, deceptive, and misleading representations or means in connection with collection of the debt and in an attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and the use of unfair and unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

44. The Encore Defendants and Defendant Morgan & Pottinger intentionally use the form affidavits in the collection lawsuits filed against consumers that contain language which alleges facts not in their possession and to which their employees and/or agents are not qualified to sign under oath due to their lack of personal knowledge about the alleged debt.

45.     In adhering to their litigation model, the Encore Defendants and Defendant Morgan & Pottinger filed and served the collection lawsuit against Plaintiff in connection with collection of the debt and in an attempt to collect the debt using Defendant Rasmussen's sworn Affidavit that contains knowingly false, deceptive, and misleading statements, as the only evidentiary basis to support their claims.

46.     Defendant Rasmussen's demands in the sworn Affidavit for amounts owed, without the personal knowledge required to make a sworn affidavit as to the correctness of the amount owed, if any, by Plaintiff, as required by Tennessee law, falsely represented the character, amount, or legal status of the alleged debt, in violation of 15 U.S.C. § 1692e(2)(A), falsely represented the compensation which may be lawfully received by any debt collector for the collection of a debt, in violation of 15 U.S.C. § 1692e(2)(B), and was the use of a false, deceptive, and misleading representations or means in connection with collection of the debt or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and the use of unfair or unconscionable means to collect or attempt to collect the debt, in violation of 15 U.S.C. § 1692f.

47.     By filing the collection lawsuit against Plaintiff with the employment of their litigation model, (a) Defendants violated 15 U.S.C. § 1692e(5) by threatening to collect the alleged debt with use of a knowingly false, deceptive, and misleading affidavit, and the threat to take any action that cannot legally be taken is the use of false, misleading and deceptive representations or means to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and (b) used false, deceptive, and misleading representations or means in connection with collection of the debt that would create a false impression in the mind of the least sophisticated consumer that the Encore Defendants and Defendant

Morgan & Pottinger had the legal right to attempt to collect the debt in the manner in which they attempted to collect it, in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

48.    By using false, deceptive, and misleading representations or means in connection with collection of the debt by filing and serving the sworn Affidavit that contained the knowingly false, deceptive, and misleading statements, including the amount owed of $4,732.40, the Encore Defendants and its agents communicated credit information to the State court, the general public, and Plaintiff, which is known or should be known to be false, in violation of 15 U.S.C. § 1692e(8).

### *Failure To Include § 1692e(11) Language In Subsequent Communication - Sworn Affidavit*

49.    The FDCPA states:

> "The failure to disclose . . . in subsequent communications that the
> communication is from a debt collector." 15 U.S.C. § 1692e(11).

50.    The sworn Affidavit is a "communication" as defined by 15 U.S.C. § 1692a(2).

51.    The sworn Affidavit is not a formal pleading made in connection with a legal action.

52.    The sworn Affidavit is a subsequent communication by the Defendants with Plaintiff in connection with collection of the debt, and Defendants failed to disclose that the communication is from a debt collector, in violation of 15 U.S.C. § 1692e(11).

### *Collection Service Licensing – Defendant Midland Funding*

53.    "Collection service" means any person that engages in, or attempts to engage in, the collection of delinquent accounts, bills, or other forms of indebtedness **irrespective of whether the person engaging in or attempting to engage in collection activity has received the indebtedness by assignment or whether the indebtedness was**

**purchased by the person engaging in, or attempting to engage in, the collection activity.** Tenn. Code Ann. § 62-20-102(3). (emphasis added)

54.   No person shall commence, conduct, or operate any collection service business in this state unless such person holds a valid collection service license issued by the [Collection Service] board under this chapter, or prior state law. Tenn. Code Ann. § 62-20-105(a).

55.   Defendant Midland Funding is a "collection service" as defined by Tennessee state law.

56.   As of the date of the filing of the collection lawsuit against Plaintiff, Defendant Midland Funding did not possess a valid collection service license issued by the Tennessee Collection Service Board that is necessary for a collection service to legally collect debts in Tennessee.

57.   By attempting to collect a debt from Plaintiff when Defendant Midland Funding was not licensed as a collection service by the Tennessee Collection Service Board, Defendant Midland Funding violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

### *Summary*

58.   The above-detailed conduct by Defendants in connection with collection of the debt and in an attempt to collect the debt was conduct in violation of numerous provisions of the FDCPA including, but not limited to the above-cited provisions of the FDCPA.

### *Respondeat Superior Liability*

59.   In addition to their individual liability under the FDCPA, the acts and omissions of Defendants Rasmussen and Morgan & Pottinger as agents for the Encore Defendants and who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principals, the Encore Defendants.

16

60.     The acts and omissions by Defendants Rasmussen and Morgan & Pottinger were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by the Encore Defendants in collecting consumer debts.

61.     By committing these acts and omissions against Plaintiff, Defendants Rasmussen and Morgan & Pottinger were motivated to benefit their principals, the Encore Defendants.

62.     The Encore Defendants are therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal law by the debt collectors employed as agents by the Encore Defendants including, but not limited to violations of the FDCPA, in their attempts to collect the debt from Plaintiff.

## TRIAL BY JURY

63.     Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692 *et seq*

64.     Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

65.     The foregoing acts and omissions of Defendants constitute numerous violations of the FDCPA including, but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692 et seq., with respect to Plaintiff.

66.    As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. §§ 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff, in an amount to be determined at trial by a jury;

- for an award of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A) in the amount of $1,000.00 against each and every Defendant, and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff; and

- for such other and further relief as may be just and proper.

12/06/12                                    Respectfully submitted,

                                            **GLADYS HOLLIFIELD**


                                            /s/      Alan C. Lee
                                            Alan C. Lee, Esq., BPR # 012700
                                            Attorney for Plaintiff
                                            P. O. Box 1357
                                            Talbott, TN 37877-1357
                                            (423) 581-0924
                                            info@alanlee.com

18